616 So.2d 239 (1993)
Willia Mae McCULLOM, as tutrix of the minor child, Tiffany Ann Victor
v.
REGIONAL TRANSIT AUTHORITY (RTA) and George Granger.
No. 92-CA-0313.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
Rehearing Denied April 20, 1993.
Writ Denied June 25, 1993.
*240 Val K. Scheurich III, Scheurich & Greene, New Orleans, for plaintiff/appellee.
Frederick F. Olsen Jr., Berrigan, Danielson, Litchfield, Olsen, Schonekas & Mann, New Orleans, for defendant/appellant.
Before CIACCIO, ARMSTRONG and WALTZER, JJ.
ARMSTRONG, Judge.
Plaintiff, Willa Mae McCullom, tutrix of Tiffany Ann Victor, instituted this personal injury action against defendants, the Regional Transit Authority (RTA), and George Granger, an RTA bus driver, seeking damages on behalf of Tiffany after she was wounded in a shooting incident aboard an RTA bus. Defendant RTA now appeals from a trial court judgment finding it liable. We affirm.
On May 10, 1989, at approximately 2:10 p.m., fifteen-year-old Tiffany Victor boarded an RTA bus at a stop located at the corner of Leonidas and Birch Streets. The bus stop was in front of Priestly Educational Support Center (Priestly), a school for students with behavioral problems. As the students boarded the bus, a teacher at Priestly, Willie Wilbon, asked George Granger, the bus driver, to skip the next bus stop. He offered Granger no explanation as to why he wanted him to skip the stop. Wilbon simply made the request because he had a "gut feeling" that something was going to happen that day. There had been some problems between Priestly students and neighborhood youths over the years.
*241 Granger proceeded to the next bus stop two blocks away at Leonidas and Hickory Streets and stopped to let either one or two passengers on the bus who had student passes. Before he could take off, Granger heard someone yell "back door." Thinking someone wanted to exit the bus, Granger released the rear door and one or more youths entered the bus through the rear door. Almost immediately a fight broke out. During the melee one youth fired a shot which missed its target and struck Tiffany Victor in her leg. Tiffany was sitting two rows in front of the rear door and was not involved in the disturbance.
The bus driver hit the "panic button" to alert the dispatcher that there was a problem on board. Police arrived and Tiffany was taken to Charity Hospital where she was treated and released. The bullet, which passed through her left thigh and lodged in the right thigh, was later removed under local anesthesia. A youth was subsequently arrested in connection with the shooting.
In a bench trial, the court found that the bus driver acted reasonably but that RTA was at fault because it knew of problems involving the Priestly students and neighborhood youths but failed to warn and advise the bus driver of the potential dangers in the area. The trial court found that this created an unreasonable risk of harm to Tiffany, and was a significant cause of the injury to her. The trial court apportioned fault at 2% to RTA and 98% to the assailant, who was not a party to the suit. Judgment was rendered against the RTA in the amount of $25,000.00 plus legal interest.
The only issue on appeal is the negligence of the RTA. The RTA claims the trial court was manifestly erroneous, clearly wrong, in finding it was at fault.
Louisiana employs the duty-risk analysis to determine liability in negligence actions. For liability to attach a plaintiff must establish that:
(1) The conduct in question was a cause-in-fact of plaintiff's harm;
(2) The defendant owed a duty to plaintiff;
(3) The duty owed was breached; and
(4) The risk or harm caused was within the scope of the breached duty.
Fox v. Board of Supervisors of L.S.U., 576 So.2d 978 (La.1991); Mart v. Hill, 505 So.2d 1120 (La.1987); Coblentz v. North Peters Parking, Inc., 533 So.2d 98 (La.App. 4th Cir.1988).
The trial court found that the RTA failed to warn the bus driver of "potential dangers" in the area of the school and that this omission was a "significant cause in fact" of the injury to Tiffany. This factual finding is subject to the clearly erroneous standard of appellate review. This court cannot disturb the finding of the trial court unless there was insufficient evidence to support the finding, or the finding was clearly wrong. Lirette v. State Farm Insurance Co., 563 So.2d 850 (La.1990); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
We first examine whether the RTA's alleged breach of duty was a cause in fact of Tiffany's harm. In Roberts v. Benoit, 605 So.2d 1032 (La.1991), the Louisiana Supreme Court stated:
Cause in fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact....
* * * * * *
An alternative method for determining cause in fact, which is generally used when multiple causes are present, is the "substantial factor" test. Under this test, cause in fact is found to exist when the defendant's conduct was a "substantial factor" in bringing about plaintiff's harm....
(Citations omitted).
Granger, who was not the regular driver on that route, stated that there was a bulletin board on which warnings could have been posted by the RTA. He said on that day there were no warnings posted concerning Priestly school, and no one informed him about any problems in the area. Granger testified that he had the authority to pass by a bus stop if he felt *242 that stopping might present a safety problem to patrons or himself. In her brief on appeal plaintiff states "had [Granger] been made aware of information RTA had, he would have probably given a lot more credence to Willie Wilbon's request to skip the Leonidas and Hickory bus stop." The trial court's finding of a cause in fact is based on the supposition that it was more probable than not that had Granger known of the problems, when school official Wilbon asked Granger to skip the next bus stop, he would have done so and Tiffany would not have been shot.
Considering all of the evidence, we are unable to say the trial court was clearly wrong in finding that the failure of the RTA to warn its drivers on the Leonidas bus line of problems in the area was a substantial factor or cause in fact of Tiffany Victor's injuries.
We next consider whether the RTA owed a duty to Tiffany Victor or the class of plaintiffs to which she belonged. Whether a legal duty is owed by one party to another depends on the facts and circumstances of each case and the relationship of the parties. U.S. Fidelity & Guaranty Co. v. Hi-Tower Concrete Pumping Service, Inc., 574 So.2d 424 (La.App. 2d Cir.1991), writs denied, 578 So.2d 136, 137 (La.1991).
An attack by one bus passenger on another is no different than one person attacking another in a place of business. Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981); Owens v. Regional Transit Authority, 559 So.2d 870 (La.App. 4th Cir.1990). Owners of business establishments who permit the public to enter their establishments have a duty to exercise reasonable care to protect those who do enter. Rodriguez, supra; Owens, supra. This duty encompasses exercising reasonable care to protect guests from harm at the hands of another patron or a third party. Boue v. Loomis Armored, Inc., 575 So.2d 527 (La.App. 5th Cir.1991); Toups v. Hawkins, 518 So.2d 1077 (La.App. 5th Cir.1987). It is clear that the RTA owed some measure of protection to Tiffany Victor and those in the class to which she belonged, however minimal it may have been. Plaintiff also submits that the instant case is analogous to Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984), where the court held that although a business owner generally owes no duty to protect patrons from assaults by third parties, if it assumes such a duty, it is liable for negligently performing or failing to perform that duty.
Geraldine Washington began serving as principal of Priestly in the fall of 1988. She testified that she contacted RTA about the problems between Priestly students and neighborhood youths during the 1988-89 school year, prior to the date of the shooting incident. She also said that there were ongoing problems involving Priestly students and RTA bus drivers so she spoke to the RTA "quite often."
Washington said Kerwin Terry from RTA came out to speak with her about the problems, but did not recall whether he discussed security or ways to avoid the problems with neighborhood youths. He also spoke to Priestly students about how to behave on the buses. Washington admitted that there was no agreement with the RTA that it would work with her on resolving problems between neighborhood youths and Priestly students. She said "we" [the school officials] clearly understood that bus drivers would not take instructions from them, and that they should call Terry if they knew of a problem.
Kerwin Terry was in charge of customer service for the RTA. He said he provided information to Priestly students from September 1988 through May 1989 on how to catch and ride on the buses. He said that Ms. Washington had informed him in October 1988 of some problems between Priestly students and people in the neighborhood. However, he said no one had contacted him regarding any specific problems near the date of the shooting incident. Terry testified RTA drivers were not authorized to skip a bus stop at the request of Priestly faculty members. He said under RTA rules a driver is not supposed to pass up a passenger at a bus stop, even if the bus is crowded.
*243 Lt. Robert Gostl, a New Orleans Police Officer and commander of the Police Department's Transit Unit for the last ten years, testified that his unit keeps track of criminal incidents occurring aboard buses. He said the incident in question was the only FBI Uniform Crime Report category crime or "serious crime" occurring on the Leonidas Street bus line from 1987-1989. He said in the year 1989, during which 60 million passengers rode on the RTA system, only 34 such crimes were recorded for the entire system. Lt. Gostl did say that in March 1989, one of the buses on that line was hit by a stray bullet fired by one of two men involved in a nearby shootout. He said that was not recorded as a serious offense by the Transit Unit because there was no intent by the shooter to hit the bus or anyone on it. That incident was unrelated to the shooting of Tiffany Victor two months later. Lt. Gostl testified that he did not recall being contacted by anyone in early 1989 about problems experienced by anyone on the Leonidas Street line. Lt. Gostl testified that the RTA reimburses the City of New Orleans for the salaries of himself and the other eight officers.
While the facts of the instant case are very different from those in Harris, because the RTA had a procedure to warn its drivers of trouble spots on bus routes, and did warn drivers of these problems, we find that it had assumed a duty to do so. This duty was perhaps greater than the ordinary duty of reasonable care owed by a business owner to his patrons.
In the instant case the RTA failed to warn bus driver Granger of any problems around Priestly school. The evidence clearly shows that the RTA knew of the problems between the students and neighborhood youths. Therefore, the RTA was remiss in not following its procedure to notify drivers of the problems, particularly Granger, who did not usually drive the Leonidas Street bus route. The RTA breached its duty to alert Granger of a trouble spots along the Leonidas Street bus route.
The duty to warn bus drivers of trouble spots on the routes must have encompassed situations such as the one in the instant case. The only purpose to be served by alerting drivers to potential problems would be to better equip them to meet and deal with the problems should they arise, as one did on the day of this incident. The duty assumed by the RTA to warn its drivers encompassed the risk that there would be trouble near the Priestly school and that Granger would have to use his discretion to skip a bus stop or take other appropriate action to avoid endangering his passengers. The risk that a Priestly student or other bus passenger would be shot by a youth armed with a firearm was, unfortunately, entirely foreseeable. Tiffany Victor fell within the ambit of protection afforded by RTA's assumed duty to warn its drivers of these problems.
Therefore, the trial court properly found that the RTA bore some fault in bringing about the incident which resulted in Tiffany Victor being shot.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
CIACCIO, J., dissents.
CIACCIO, Judge, dissenting.
I respectfully dissent.
Although the RTA had general knowledge of problems in the area of the Priestly school in the past, the RTA had no information or prior warning of anticipated trouble at the Hickory street bus stop on the day of the shooting. Accordingly, it had no reason to alert its bus driver of such a contingency. Thus, I find it had no duty to warn him of the possibility of trouble at that location on the date in question.
The request of the bus driver by an unidentified person to skip the Hickory street stop did not include any warning of danger. I agree with the trial judge that the bus driver was not negligent in stopping the bus to pick up one passenger at the Hickory street stop.
The Orleans Parish School Board has the primary responsibility for the safety of the students in its custody. If the assistant *244 principal, Mr. Wilborn, had a "gut feeling" of potential trouble at the Hickory street stop he should have given this warning to the driver or to someone at RTA.
However, in the absence of any specific knowledge of anticipated trouble, but mere suspicion or speculation, I find no duty on the part of RTA to do anything to warn its bus driver of such a speculative event. Nor do I find a duty to continually post a warning on the RTA bulletin board.
Accordingly, I find the trial court was clearly wrong in assessing any fault against RTA. I would reverse the judgment.