637 So.2d 167 (1994)
William J. LONG, Plaintiff-Appellant,
v.
Robert J. ALOST, Defendant-Appellee.
No. 93-1324.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
Rehearing Denied June 22, 1994.
John Makar, Natchitoches, for William J. Long.
Ronald E. Corkern Jr., Natchitoches, for Robert J. Alost.
Kenneth D. McCoy Jr., Natchitoches, for Northwestern State University of LA.
Before LABORDE, KNOLL and WOODARD, JJ.
WOODARD, Judge.
This appeal arises out of a lawsuit for defamation. We must determine the timeliness of plaintiff's appeal of the judgment granting defendant's motion for summary judgment, and we must review the trial court's assessment of sanctions against plaintiff and his attorney.

*168 FACTS
Plaintiff, William J. Long, was a non-tenured faculty member at Northwestern State University (NSU) who also served as the Director of the Louisiana Research and Development Center (LRDC), a non-profit corporation that operated on the campus of NSU. In 1990, the State Legislative Auditor and the United States Department of Labor conducted a joint audit of the LRDC and issued the results of the audit in a report dated January 25, 1991. Because several of the audit's findings related to the relationship between LRDC and NSU, NSU issued a report dated April 15, 1991 responding to the findings pertaining to NSU. This report was prepared by NSU's legal counsel and contains a cover letter authored by defendant, Dr. Robert A. Alost, President of NSU. The report was submitted to the Board of Trustees for State Colleges and Universities.
On April 14, 1992, plaintiff filed suit against Dr. Alost alleging that Dr. Alost caused the report to be issued and that plaintiff had been defamed by certain statements in the report. The petition listed five allegedly defamatory statements that plaintiff claimed were in the NSU report. All of the statements, however, referred to the LRDC and not to plaintiff; therefore, defendant filed a peremptory exception of no right of action. At the hearing on the exception held August 18, 1992, plaintiff submitted a "Supplemental Petition" to the court. The court then continued the hearing until August 25, 1992. Thereafter, defendant filed a motion to strike plaintiff's supplemental petition because a supplemental petition can only be filed with leave of court, which plaintiff had not obtained.
Following the hearing on August 25, 1992, the trial court granted defendant's exception of no right of action as to the allegations in plaintiff's original petition; however, the court allowed plaintiff ten days to file an amended petition. Plaintiff did so on September 4, 1992, and set forth the following allegations:
"That without limitation, plaintiff shows that defendant intentionally, untruthfully and maliciously libelled and defamed plaintiff in the [NSU report] ... That said report had, inter alia, the following untruthful comments about plaintiff.
A. That Dr. Long paid a $600.00 car allowance to himself from JTPA funds unlawfully.
B. That NSU had no institutional knowledge of any of the four employment contracts between plaintiff and the LRDC when in fact all contracts were signed by NSU division heads.
C. That defendant had an employee of the NSU post office file faked and back-dated invoices to the LRDC to damage plaintiff.
D. That defendant caused back-dated invoices to be filed charging the LRDC with expenses supposedly incurred during the 2nd year of the LRDC when the LRDC and NSU had no contractual agreement.
E. That defendant told administrative Judge Billy Gahagan in February 1992 that plaintiff did not have a doctorate degree; he further told him that he, Alost, had not given interviews with either state or federal auditors whereas he had done so.
F. That other defamatory material is contained in the report circulated by defendant."
On October 13, 1992, defendant filed a motion for summary judgment and for sanctions pursuant to La.Code Civ.P. art. 863. The court granted defendant's motion for summary judgment and rendered judgment dismissing the lawsuit on December 7, 1992. The judgment also awarded defendant $2,500 attorney's fees in accordance with Article 863, but reserved its ruling on sanctions pending review of counsels' briefs on the issue.
Plaintiff thereafter filed a motion for new trial which was heard March 2, 1993. The court ruled in favor of defendant and signed the judgment dismissing plaintiff's motion for new trial on March 4, 1993.
Finally, on May 13, 1993, the trial court issued a judgment on sanctions and held plaintiff and his attorney liable in solido for sanctions in the amount of $8,055.00. On July 7, 1993, plaintiff filed a motion for appeal, *169 appealing "the final judgment rendered on the 13th day of May 1993 and all prior interlocutory judgments."

THE APPEAL
There are two judgments which plaintiff wishes to appeal: the December 7, 1992 judgment granting defendant's motion for summary judgment, and the May 13, 1993 judgment for sanctions.
La.Code Civ.P. art. 2083(A) sets forth those judgments which are appealable as follows:
"An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury, and from a judgment reformed in accordance with a remittitur or additur under Article 1814."
The December 7 judgment was a summary judgment and summary judgments are final judgments. La.Code Civ.P. art. 968. A final judgment is one that determines the merits of the case, in whole or in part, and it need not dispose of all the issues between the parties to be appealable. La.Code Civ.P. art. 1841; Devillier v. City of Opelousas, 243 So.2d 118 (La.App. 3 Cir.1971). The delay for taking a devolutive appeal in this case was sixty days from the date of the mailing of the notice of the court's denial of plaintiff's application for new trial. La.Code Civ.P. art. 2087. The judgment denying plaintiff's motion for new trial was signed March 4, 1993. The notice of judgment was issued March 5, 1993. Plaintiff did not file his appeal until July 7, 1993, clearly beyond the delay allowed for appeal.
Because plaintiff's appeal was not filed within sixty days of the mailing of notice of denial of new trial, this court, on October 11, 1993, issued a rule to show cause why the portion of plaintiff's appeal concerning the December 7 judgment should not be dismissed as untimely. In his response to the rule to show cause, plaintiff failed to show why his appeal of the December 7 summary judgment should not be dismissed and argued only that his motion for new trial was filed timely. However, since the trial court held that his motion for a new trial was filed timely, timeliness is not at issue. Accordingly, we find plaintiff's appeal relates only to the May 13, 1993 judgment regarding sanctions and is dismissed to the extent it relates to the December 7, 1992 judgment.

SANCTIONS
The trial court assessed sanctions against plaintiff and his attorney, in solido, in the amount of $8,055.00. La.Code Civ.P. art. 863 imposes an obligation on litigants and their counsel who sign a document to make an objectively reasonable inquiry into the facts and the law. Subjective good faith does not satisfy this duty of reasonable inquiry. Murphy v. Boeing Petroleum Services, 600 So.2d 823 (La.App. 3 Cir.1992).
The trial court found that plaintiff and his counsel did not make an objective and reasonable inquiry into the facts of this case because the allegedly defamatory statements which plaintiff claims are in the NSU report are not, in fact, contained in the report. We must apply the abuse of discretion standard of review in evaluating the trial court's finding that a violation occurred. Additionally, the court has considerable discretion as to the type and severity of sanctions to be imposed. Romero v. Chris Crusta Flying Service, 587 So.2d 803 (La.App. 3 Cir.1991); McCullom v. Regional Transit Authority, 616 So.2d 239 (La.App. 4 Cir.), writ denied, 620 So.2d 852 (La.1993).
Our review of the record reveals a failure to reasonably inquire into both the facts of plaintiff's case and the law concerning defamation. The only items set out by plaintiff that are even remotely close to anything written in the NSU report were those statements set forth in sections A and B of plaintiff's amended petition. The statement set out in section A, however, was actually a statement made in the audit; the NSU report is a response to the audit and merely refers to this finding by the auditors. The report says nothing further about the allegation.
The statement set out in section B is found in the report as follows:

*170 "NSU has no institutional knowledge of any of the four alleged employment contracts between Dr. Long and the LRDC (allegedly represented by Dr. Norton Marks, who is no longer at NSU) which were mentioned in the Audit."
Again, this is a response by NSU to an allegation in the audit. Although plaintiff is mentioned in the statement, the statement is in no way defamatory of plaintiff because it is not about plaintiff; it is about NSU's knowledge of certain contracts.
The remaining statements set out in plaintiff's petition are not contained in the report. When asked at the hearing to locate these statements in the report, plaintiff and his attorney were unable to do so. For these reasons, we find no abuse of discretion by the trial court in its determination regarding sanctions. The judgment appealed from is affirmed and costs of this appeal are assessed to plaintiff-appellant, William J. Long.
AFFIRMED.