568 So.2d 1134 (1990)
Paul L. DODD
v.
Eloise Hicks, wife of Paul L. DODD.
Eloise Hicks, wife of Paul L. DODD
v.
Paul L. DODD.
Nos. 90-CA-276, 90-CA-277.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1990.
*1135 Fiasconaro & Fiasconaro, Paul S. Fiasconaro, New Orleans, for plaintiff-appellant.
Lowe, Stein, Hoffman, Allweiss & Hauver, Ellen Widen Kessler, New Orleans, for defendant-appellee.
Before CHEHARDY, C.J., and GRISBAUM and GOTHARD, JJ.
CHEHARDY, Chief Judge.
The issue on this appeal is whether the district court's issuance of an Amended Domestic Relations Order, rendered pursuant to a community property partition judgment, was a substantive change in a final judgment and thus was impermissible under LSA-C.C.P. art. 1951.

FACTS
Paul L. Dodd and Eloise Hicks Dodd (now Eloise Hicks Meacham) were divorced on June 6, 1986. Mrs. Dodd subsequently filed a petition to partition the community of acquest and gains and a judgment of partition was rendered on April 4, 1988.
A substantial portion of the community assets consisted of four employee benefit plans in the name of Paul L. Dodd, acquired during Mr. Dodd's employment by Shell Oil Company, which were valued in the partition judgment as follows:

Shell Provident Fund $199,682.59
Shell Pay Deferral Investment
Fund 4,128.23
Shell Employee Stock Ownership
Plan 41,219.70
Shell Pension Trust (Value Unknown at
 Time of Judgment)

The judgment also apportioned these assets in the following manner:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Eloise Hicks Dodd be awarded the sum of FORTY ONE THOUSAND TWO HUNDRED NINETEEN AND 70/100 ($41,219.70) DOLLARS, together with interest, dividends and stock splits, contained in the Shell Employees Stock Ownership Plan, to be paid unto Eloise Hicks Dodd immediately upon judicial approval of a Qualified Domestic Relations Order;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Eloise Hicks Dodd be awarded the sum of NINETY-NINE THOUSAND EIGHT HUNDRED FORTY-ONE AND 30/100 ($99,841.30) DOLLARS, together with interest, dividends and stock splits, contained *1136 within the Shell Provident Fund, to be paid unto Eloise Hicks Dodd upon Paul L. Dodd's fiftieth (50th) birthday or upon his termination of employment with Shell Oil Company, whichever occurs first, subject to judicial approval of a Qualified Domestic Relations Order;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Eloise Hicks Dodd be awarded the sum of TWO THOUSAND SIXTY-FOUR AND 12/100 ($2,064.12) DOLLARS, together with interest, dividends and stock splits, contained in the Shell Pay Deferral Investment Fund, to be paid unto Eloise Hicks Dodd upon Paul L. Dodd's fiftieth (50th) birthday or upon his termination of employment with Shell Oil Company, whichever occurs first, subject to judicial approval of a Qualified Domestic Relations Order;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Eloise Hicks Dodd's interest in the Shell Pension Trust be recognized as a future interest payable in accordance with the Sims formula [Sims v. Sims, 358 So.2d 919 (La.1978)] upon Paul L. Dodd's retirement with Shell Oil Company in the proportion that the benefits are attributable to Mr. Dodd's employment during the community * * *."
The "Qualified Domestic Relations Order" mentioned in the judgment is required by federal law to distribute proceeds of an ERISA-qualified employee benefit plan to a former spouse. Employee Retirement Income Security Act of 1974 [ERISA], 26 U.S.C. Sec. 401(a)(13) and Sec. 414(p).
On April 28, 1988, the district court signed a Domestic Relations Order (hereafter called DRO) which recognized Eloise Hicks Dodd as an alternative payee of the employee benefit plans and assigned benefits to her as stated in the judgment, in dollar amounts, but expressed the provision for interest, dividends and stock splits as "all interest, dividends, market gains, and stock splits accruing thereon since April 4, 1988," with regard to the Provident Fund, SESOP, and the Deferral Fund. The DRO also stated,
"It is intended that this Order will qualify as a `Qualified Domestic Relations Order' within the meaning of Section 414(p) of the [Internal Revenue] Code and the Retirement Equity Act of 1984, Pub.L. No. 98-397. If any Order submitted to the Administrator of any of the plans described in Paragraph 4, above, is not held to be a Qualified Domestic Relations Order (a `QDRO') within Section 414(p), this Court or another court of competent jurisdiction shall modify this order to make it a QDRO, which shall be entered nunc pro tunc to April 4, 1988."
The DRO was submitted to the Plan Administrator of Shell Oil Company for approval on or about May 1, 1988. Simultaneously Mr. Dodd filed an appeal from the April 4, 1988, judgment and Mrs. Dodd filed an answer to his appeal.
In November 1988 the parties dismissed the appeal by joint motion. In June 1989, Mrs. Dodd's attorney received a letter from the Plan Administrator office informing her that the April 1988 DRO could not be accepted as a Qualified Domestic Relations Order because Mrs. Dodd's interests in the plans were expressed in dollar amounts rather than in percentages. The letter also suggested changes in the language of certain other provisions not at issue on this appeal.
The parties were unable to agree on a new DRO that would be acceptable to the Plan Administrator. Eventually Mrs. Dodd filed a rule to show cause why the amended DRO, which had been developed in a conference between the parties and the judge, should not be signed. Mr. Dodd filed exceptions of res judicata and unauthorized use of summary proceedings. Following a hearing the trial judge denied Mr. Dodd's exceptions and granted Mrs. Dodd's rule, agreeing to sign the amended DRO. From that judgment Mr. Dodd has taken this appeal.

EFFECT OF AMENDED DRO
He asserts, first, that the district court erred in ordering an amendment to the original domestic relations order which *1137 changed the substance of the original final judgment of partition.
The problem arises because the original judgment not only stated Mrs. Dodd's interests in dollars rather than in percentages, but also failed to set a date from which the interest, dividends and stock splits would accrue. The first DRO provided for these gains to accrue from the date of the partition judgment. The amended DRO provided for the gains to accrue from the date of termination of the community.
The challenged portions of the amended DRO state:
"5.
The Alternate Payee of the Provident Fund, Eloise Hicks Meacham, is entitled to receive an amount equivalent to fifty percent (50%) of the total account as of October 1, 1985, together with all interest, dividends, market gains, and stock splits accruing thereon since October 1, 1985. * * *
* * * * * *
9.
Alternative Payee of the SESOP, Eloise Hicks Meacham, is entitled to receive an amount equal to One Hundred Percent (100%) of all shares as of October 1, 1985, together with all interest, dividends, market gains, and stock splits accruing thereon since October 1, 1985. * * *
10.
Alternative Payee of the Deferral Fund, Eloise Hicks Meacham, is entitled to receive a sum equal to fifty percent (50%) of the total amount of such account as of October 1, 1985, together with all interest, dividends, market gains, and stock splits accruing thereon since October 1, 1985. * * *"
Mr. Dodd contends these revisions are substantive changes to the final judgment of April 4, 1988, prohibited by LSA-C.C.P. art. 1951, which states:
"A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation." (Emphasis added.)
Mr. Dodd contends, "The obvious substantive change is made by changing the date for `interest, dividends, market gains and stock splits' from April 4, 1988 [the date stated in the original DRO] to October 1, 1985 and changing the fixed amount of $41,219.70 to `100% of all shares as of October 1, 1985'." Similarly, the provisions for the Provident Fund and the Deferral Fund convert Mrs. Dodd's interest from dollar amounts to percentage amounts and make the interest, dividends, etc., due from October 1, 1985, rather than from April 4, 1988, as stated in the first DRO.
Mr. Dodd argues a proper amendment would have have been to state Mrs. Dodd's interests in the funds as "the appropriate number of shares or units in each fund which equal the respective dollar figures contained in the judgment of April 4, 1988." Otherwise, he asserts, Mrs. Dodd receives a money enrichment because the dollar amounts in the judgment were the values of the funds on the date of trial and thus included any interest, dividends, market gains and stock splits from October 1, 1985 (stipulated by the parties as the community termination date) to the date of trial. Therefore, he contends, awarding her these gains from October 1, 1985 gives her double the amount of the gains, a difference the parties agree is at least $36,000.
Mrs. Dodd contends the amendment of the DRO to comply with the requirements of the Plan Administrator simply changed the phraseology of the judgment without altering its substance.
The dispute is simply whether the amended DRO, in attempting to interpret the judgment in language acceptable to the Plan Administrator, went outside the scope of the partition judgment.
LSA-R.S. 9:2801(4)(a) provides that in partitioning community property the court shall value the assets as of the time of trial on the merits. At the rule to show cause *1138 why the amended DRO should not be signed, the trial judge stated the parties had stipulated at the partition trial that the values of the funds shown in one of Mrs. Dodd's exhibits were the values as of the date of trial, which took place on September 14 and September 18, 1987. The stipulated values were those listed in the judgment rendered on April 4, 1988.
The parties also had stipulated at the partition trial that the accounts, as they existed on October 1, 1985, were community property. Thus, the judge stated, he awarded Mrs. Dodd half of the value of the Provident and Deferral Funds and all of the value of SESOP at the time of the trial. He interpreted the values stated in the judgment to include the values of the funds as they existed on October 1, 1985, adjusted to the date of the trial to reflect changes in value due to interest, dividends, market gains, stock splits, etc., that may have occurred from October 1, 1985, to the date of the trial. He stated the judgment provided further that Mrs. Dodd should continue to receive those adjustments until the date of payment.
Accordingly, the judge concluded, the changes in the amended DRO, converting the dollar amounts into percentages and awarding the adjustments from October 1, 1985, made no substantial change in the partition judgment.
A judgment should be so construed as to give effect to every word and part thereof and the effects and consequences which follow from its terms, whether expressed or implied. In re Clover Ridge Planting & Manufacturing Co., 193 So. 468 (La.1940).
In construing an ambiguous judgment, resort may be had to the entire record to aid in arriving at its meaning or to clarify its intention. Kilcrease, Ehlinger & Faulkner, Inc. v. McLeod, 357 So.2d 67 (La.App. 4 Cir.1978). In construing a judgment, the entire context must be considered, and in the event of doubt or ambiguity, it is proper to consider the pleadings, subject matter of suit, reasons for judgment, and other matters of record in order to arrive at an interpretation consistent with a proper decree on the facts and law presented. American Bank & T. Co. v. Blue Bird Restaurant & L., 294 So.2d 302 (La.App. 1 Cir.1974), writ denied 296 So.2d 840.
An alteration in a judgment which does not affect the substance is one that neither takes anything away from nor adds anything to the original judgment. Villaume v. Villaume, 363 So.2d 448 (La. 1978).
We conclude the trial judge did not err in approving the amended DRO. Reference to the partition judgment itself and to the parties' stipulations establishes it was intended that Mrs. Dodd should receive the entire value of the SESOP and half the value of the Provident and Deferral Funds as they existed on the date of termination of the community, plus dividends and other gains from that date until paid. The figures to which the parties stipulated simply incorporated the gains from October 1, 1985, to the date of trial.
As stated in Kerr v. Kerr, 479 So.2d 977 (La.App. 3 Cir.1985), an amendment to a judgment which merely changes the language to express a party's interest in percentage figures is nothing more than a change of phraseology, permitted by C.C.P. art. 1951.
Although the beginning date for the accrual of interest, dividends, market splits and stock gains on Mrs. Dodd's share of the funds was not stated in the judgment, it is clear such gains were to be accorded her from the date of trial until paid, because the values established at trial already included the gains from October 1, 1985 to the date of trial.
Thus, to award her the gains from October 1, 1985 is correct, because by expressing her interest in the principal of the funds as a percentage of their value as of the community termination date removed the value of the gains that had been added on at the time of the trial.

APPLICABILITY OF RES JUDICATA TO DRO
Contrary to Mr. Dodd's contentions, the original DRO was subject to amendment. *1139 It is not a final judgment, because it does not determine the merits of the action. LSA-C.C.P. art. 1841. Rather, it is simply a means of effectuating the final judgment of partition and must be considered an interlocutory judgment. As such, it may be changed in substance, although such changes must not contradict the terms of the judgment on which it is based. Therefore, res judicata is not applicable because an interlocutory judgment does not acquire "the authority of the thing adjudged." LSA-R.S. 13:4231.

ATTORNEY'S FEES AND COSTS
Both parties seek award of attorney's fees and costs, each asserting the other has pursued the matter solely for purposes of delay and without sound basis in the law. We disagree, finding the issues raised have merit and do not constitute a frivolous appeal.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. Each party is to pay his or her own costs.
AFFIRMED.