625 So.2d 675 (1993)
Christi VEAZEY
v.
ELMWOOD PLANTATION ASSOCIATES, LTD. and Southmark Management Corporation.
No. 93-CA-284.
Court of Appeal of Louisiana, Fifth Circuit.
October 13, 1993.
*676 Charles R. Capdeville, Wanda T. Anderson, Law Offices of Charles R. Capdeville, Metairie, for defendant-appellant.
Jacob J. Amato, Jr., Lisa A. Dunn, Amato & Creely, Gretna, for plaintiff-appellee.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
This appeal arises out of a trial by jury involving the liability of an apartment complex management firm for the rape of one of its tenant. We affirm.
ISSUES
We are called upon to resolve numerous specific questions:
(1) Whether the trial court erred by allowing into evidence testimony concerning verbal promises of security that were not incorporated into the subsequent lease;
(2) Whether this Court's December 20, 1991 writ decision addressed the parol evidence rule, ergo establishing the law of the case;
(3) Whether the trial court erred in not applying La.C.C. art. 2716 whereby the lessee *677 and not the lessor would have been solely liable for the locks on the windows on the leased premises;
(4) Whether the trial court committed reversible error in failing to charge the jury that fault could be assessed between an unknown intentional tortfeasor (the rapist) and a negligent tortfeasor (the apartment complex);
(5) Whether the trial court erred in amending the jury's finding that the defendant was 60 percent at fault and the plaintiff was 40 percent at fault when there was a discrepancy between the jury's answers to the interrogatories and the general verdict; and
(6) Whether the trial court, upon granting the judgment notwithstanding the verdict (JNOV), erred in finding that the management of the apartment, Southmark Management Corporation (Southmark), was 100 percent at fault for the rape of the plaintiff.
BASIC RECORD FACTS AND PROCEDURAL HISTORY
On June 28, 1988, plaintiff, Christi Veazey, entered into a lease with Tonti Management Corporation (Tonti) for an apartment located in the Elmwood Plantation Apartments (Elmwood Apartment) complex. The Elmwood Apartment complex was sold within two weeks after plaintiff rented her apartment and defendant, Southmark, assumed the management duties.
At approximately 1:45 a.m. on October 3, 1988, plaintiff was raped by a man who entered her second-floor apartment through her bedroom window. Plaintiff filed suit on November 16, 1988, alleging that defendant, Southmark, was negligent in failing to provide security, failing to maintain the complex in a manner to discourage criminal activity, failing to provide adequate window locks and misrepresenting the amount of security and prior criminal occurrences.
Southmark made a third-party demand against the previous management company, Tonti. Tonti filed a motion for summary judgment, which was denied by the trial court. Tonti subsequently sought writs, which were granted. Hence, Tonti was dismissed.
In April 1992, Southmark filed for summary judgment, which was denied by the trial court. Southmark also filed a motion in limine seeking to prevent testimony, concerning oral promises allegedly made prior to the written lease, from being presented at trial. The trial court deferred ruling on the motion in limine to the merits. From both these rulings, Southmark sought writs, which were denied.
A four-day trial commenced on May 4, 1992, before a 12-person jury, and resulted in an inconsistent verdict. After noticing the discrepancy, Ms. Veazey filed a motion for clarification and, in the alternative, a JNOV or a new trial. The trial court granted the motion for clarification and the JNOV. It then found defendant, Southmark, 100 percent at fault.
ANALYSISISSUE ONE
Initially, we are called upon to determine whether the trial court erred by allowing into evidence testimony concerning verbal promises of security that were not incorporated into the subsequent lease. The record reflects that Christi Veazey and her mother testified that the alleged promises of security were made prior to the signing of the written lease.
The general rule concerning parol evidence is set forth in La.C.C. art. 1848, which provides:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
The pertinent lease language reads, to-wit:
Police protection is the function of the Jefferson Parish Sheriff's office. Tonti Management Corporation cannot be responsible for you or the contents of your apartment or automobile. Any guards seen on Tonti property have been employed to patrol our rental offices and *678 physical plant only. They are not for your personal protection.
Our statutory law provides an exception to the parol evidence rule in that parol evidence is admissible to prove a vice of consent. See La.C.C. art. 1848. Fraud is listed as a vice of consent in La.C.C. art. 1948 and is defined in La.C.C. art. 1953 as a misrepresentation. Accordingly, where misrepresentation is alleged, parol evidence, commonsensibly, is admissible to establish whether the allegation is true. First Financial Bank, FSB v. Austin, 514 So.2d 281 (La.App. 5th Cir.1987), writ denied, 515 So.2d 1112 (La.1987). Since plaintiff's petition specifically alleged that Southmark "misrepresented the amount of security," we find the plaintiff and her mother's testimony concerning the oral promises of security outside the written lease were properly admitted.
ANALYSISISSUE TWO
Next, we are called upon to determine whether this Court's December 20, 1991 writ decision addressed the parol evidence rule, ergo establishing the law of the case.
"Law of the case" is a discretionary policy whereby an appellate court will not reconsider its prior rulings on an issue in a subsequent appeal in the same case. Ficarra v. Mount Vernon Fire Ins. Co., 527 So.2d 493 (La.App. 5th Cir.1988). This Court has previously held that the "law of the case" doctrine applies to previous decisions on writ applications as full appellate proceedings. Mihalopoulos v. Westwind Africa Line, Ltd., 511 So.2d 771 (La.App. 5th Cir.1987).
The appellant argues that when this Court granted Tonti's summary judgment in the writ decision rendered on December 20, 1991, it found that the parol evidence rule applied, and submits the ruling became the "law of the case." Therefore, appellant states that the parol evidence rule should have been applied at trial which would have prevented any testimony about oral promises of security allegedly made prior to the written lease.
We see that when this Court, on December 20, 1991 granted the writ regarding Tonti's motion for summary judgment, it simply stated:
After careful review of this application, we conclude there is no issue of material fact and the relator is entitled to judgment as a matter of law. Ergo, the trial court erred in not granting summary judgment on behalf of the relator, who we hereby dismiss with prejudice from these proceedings. See La.C.C.P. art. 968; Kiefer v. Whittaker, 468 So.2d 587 (La.App. 4th Cir.1985).
There was no decision regarding the parol evidence rule; therefore, there was no "law of the case" to that effect. Ergo, the trial court committed no error in allowing parol evidence.
ANALYSISISSUE THREE
We now must determine whether the trial court erred in not applying La.C.C. art. 2716 whereby the lessee and not the lessor would have been solely liable for the locks on the windows on the leased premises.
La.C.C. art. 2716 is entitled "Repairs at expense of lessee" and, in pertinent part, states: "The repairs, which must be made at the expense of tenant, are those which, during the lease, it becomes necessary to make: To windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place."
In the ordinary use of the word, repair means "to restore to sound condition after damage or injury." American Heritage Dictionary. Plaintiff's petition alleges that Southmark was negligent in providing inadequate locks on the windows in the apartment. Moreover, nowhere is it alleged that the locks were broken and/or in need of repair. In fact, the record shows that, when Christi Veazey testified about the window the rapist entered, she emphatically stated that the lock was in working order, to her knowledge.
Finally, the questions of whether a landlord owes a duty to provide adequate locks and whether the locks in question are adequate necessarily require a duty/risk analysis. Accordingly, we cannot say that the trial court erred in not applying La.C.C. art. 2716.
ANALYSISISSUE FOUR
We now turn to establish whether the trial court committed reversible error in failing *679 to charge the jury that fault could be assessed between an unknown intentional tortfeasor (the rapist) and a negligent tortfeasor (the apartment complex).
For fault assessment, we are guided by our statutory law in La.C.C.P. art. 1812, which allows a jury to apportion fault not only to the parties of an action but also to other persons, whether party or not. La. C.C.P. art. 1812, in pertinent part, provides:
C. In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to:
(2) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
Additionally, our jurisprudence provides that the adequacy of jury instructions must be determined in light of the jury instructions as a whole. Moreover, adequate jury instructions have been defined as those that provide the correct principles of law so that the jury may reach a verdict based on the law and facts. Finally, whether the lack of a jury instruction constitutes reversible error depends on whether the jury was misled to such an extent as to prevent it from doing justice. See Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.1983), writ denied, 434 So.2d 1097 (La.1983).
We note that the statutory language contained in La.C.C.P. art. 1812 carefully connotes that "the court may." Of equal importance, the article also qualifies the court's discretion by stating "if appropriate." Likewise, our jurisprudential "mandates" state that the denial of a jury charge can only constitute reversible error if the jury was misled to such an extent as to prevent it from doing justice. In other words, a trial judge necessarily and commonsensibly possesses wide discretion in assessing which charges are appropriate.
After an exhaustive search of suggested guidelines, see Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985); McCullom v. Regional Transit Authority, 616 So.2d 239 (La.App. 4th Cir. 1993); Thompson v. Hodge, 577 So.2d 1172 (La.App. 2d Cir.1991); Morris v. Yogi Bear's Jellystone Park, 539 So.2d 70 (La.App. 5th Cir.1989), writ denied, 542 So.2d 1378 (La. 1989); and Peacock's Inc. v. Shreveport Alarm Co., 510 So.2d 387 (La.App. 2d Cir. 1987), writs denied, 513 So.2d 826, 827, 828 (La.1987), we find it is permissible to assess fault between intentional and negligent tortfeasors.
However, after careful review, we can only say the trial court did not commit reversible error because of the wide discretion granted by our statutory scheme, and, more importantly, we conclude the trial court's action did not cause the jury to be misled to such an extent as to prevent it from doing justice.
ANALYSISISSUES FIVE AND SIX
We now turn to address whether the trial court erred in amending the jury's finding that the defendant was 60 percent at fault and the plaintiff was 40 percent at fault when there was a discrepancy between the jury's answers to the interrogatories and the general verdict and whether the trial court, upon granting the JNOV, erred in finding that the management of the apartment, Southmark, was 100 percent at fault for the rape of the plaintiff.
We see the trial court's initial judgment, dated May 19, 1992, adopted the jury verdict as the final judgment, which reads:
IT IS ORDERED, ADJUDGED AND DECREED that the verdict of jury be the judgment of the Court.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that negligence against the plaintiff, Christi Veazey, be assessed at 40% and negligence against the defendant, Southmark Management Corporation[,] be assessed at 60%.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Christi Veazey[,] in the full sum of ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00) plus THIRTY THOUSAND AND NO/100 *680 DOLLARS ($30,000) in special damages together with legal interest from date of judicial demand until paid, and for all costs.
La.C.C.P. art. 1813(D) states that
When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial.
The record reflects that the jury's responses to the pertinent interrogatories were as follows:
INTERROGATORY NO. 1:
With respect to the defendant, Southmark Management Corporation:
Was Southmark Management Corporation at fault with respect to the incident and did that fault produce or substantially contribute to the incident?
Yes [9] No [3]
(If you answered "Yes" to Interrogatory No. 2, proceed to Interrogatory No. 3. If you answered "No" to Interrogatory No. 1, sign and date the verdict form and return it to the courtroom.)
INTERROGATORY NO. 2:
With respect to the plaintiff, Christi Veazey:
Was the plaintiff, Christi Veazey, at fault with respect to the incident and did that fault produce or substantially contribute to the incident?
Yes [0] No [12]
INTERROGATORY NO. 3:
What percentage of Ms. Veazey's damages do you find were caused by Southmark Management Corporation, if any? What percentage of Ms. Veazey's damages should be reduced by the fault of Ms. Veazey, if any?

Southmark Management Corporation [60%]
Ms. Christi Veazey [40%]
(Percentage must total 100%)

While no one noticed the discrepancy at the time the verdict was rendered, approximately two weeks later, plaintiff filed a motion for a JNOV and in the alternative a motion for new trial. Plaintiff also filed a motion for clarification of judgment, which was granted, as well as the JNOV. In doing so, the trial court found that Southmark was liable for the entire $180,000 as assessed by the jury without any reduction for comparative fault. It appears that the trial court attempted to clear up the discrepancy by adopting the jury's answer to the interrogatories as opposed to the general verdict.
Importantly, substantive changes in a final judgment can only be made pursuant to a new trial or on appeal. La.C.C.P. art. 1951. Appellant argues that the trial court's judgment of clarification substantively changed the original final judgment, and, since the trial court denied plaintiff's motion for a new trial, the judgment of clarification should be null and void. O.M.E.R. S.p.A. v. Vendredi II, 560 So.2d 34 (La.App. 4th Cir.1990).
Our jurisprudence provides that a permissible alteration in a judgment is one that neither takes away from nor adds to the original judgment. Dodd v. Dodd, 568 So.2d 1134 (La.App. 5th Cir.1990). A fortiori, a change in a judgment that takes away from the original judgment, is an impermissible change.
The general verdict of the jury that was adopted by the trial court was inconsistent with the interrogatories. The judgment of clarification, while resolving the discrepancy, substantively changed the final judgment by taking away 40 percent of the fault from plaintiff as apportioned by the jury and expressly adopted in the original judgment. Therefore, it was an improper judgment and constitutes error.
Additionally, the trial court granted a JNOV (in the same judgment) which set aside the jury's apportionment of fault of 60/40 and found appellant was 100 percent at fault. We note that a JNOV is to be granted only when the facts are overwhelmingly in favor of the mover that reasonable jurors could not have arrived at a contrary verdict. Pattison v. Valley Forge Ins. Co., 599 So.2d 873 (La.App. 4th Cir. 1992), writ denied, 604 So.2d 1001 (La. 1992). Here, the record is devoid of any facts that *681 would support finding Christi Veazey at fault for her own rape. Ms. Veazey testified that the window through which the rapist entered was locked. Norman Schultz, a detective who investigated the rape scene, indicated in his testimony that the rapist could have entered plaintiff's apartment despite a locked window.
Accordingly, we cannot say the trial court was manifestly erroneous in granting the JNOV, despite the fact that the clarification aspect of that judgment did constitute error. There was no reversible error simply because the court's judgment was styled as a clarification and a JNOV. In reality, the judgment takes on the legal posture of a JNOV and nothing more.
For the reasons assigned, the trial court's judgment dated September 3, 1992 is hereby affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.