751 So.2d 911 (1999)
DIXIE SAVINGS AND LOAN ASSOCIATION
v.
E.J. PITRE.
No. 99-CA-154.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1999.
Writ Denied December 10, 1999.
*913 Regina S. Wedig, Donald E. Theriot, Bordelon, Hamlin & Theriot, New Orleans, Louisiana, Attorneys for Defendant/Appellee FDIC as Receiver for Dixie Federal Savings & Loan.
Elizabeth Smyth Sirgo, Chopin, Wagar, Cole, Richard & Reboul, Metairie, Louisiana, Attorney for Defendant/Appellee The Home Insurance Company.
Samuel J. Accardo, Jr., Accardo, Edrington & Golden, Laplace, Louisiana, Attorney for Defendant/Appellant Sheriff of St. John the Baptist Parish.
Patrick D. Breedon, New Orleans, Louisiana, Attorney for Plaintiff/Second Appellant E.J. Pitre and Cindy Pitre.
*914 Panel composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr., and SOL GOTHARD.
GOTHARD, Judge.
This matter involves protracted litigation between the parties. In 1979, plaintiff, E.J. Pitre, executed a promissory note which was secured by a mortgage on a mobile home. The note was paraphed with a chattel mortgage which was subsequently assigned to Dixie Savings and Loan Association (Dixie).[1] Pitre fell behind in the payments, and Dixie filed a petition to enforce the chattel mortgage by executory process. In due course the district judge signed an order for executory process, and on March 10, 1983 the clerk issued a writ of seizure commanding the Sheriff of St. John the Baptist Parish to:
Seize and Sell at Public auction, with benefit of appraisement, to the last and highest bidder the following described mortgaged property to pay and satisfy said claim ....to wit:
1 1979 Capri # BR 80×14 Mobile Home, Manufacturer's Serial No. ALS-79-14×803 + 2CKSN8153, complete with items included, as set forth in said mortgage.
The mortgage referenced in the Writ of Seizure listed the following:
Items Included: Air conditioning, furniture (per manufacturer's floor plan), a range and a refrigerator.
On April 13, 1983, the Sheriff served notice of the seizure on Pitre and seized the mobile home that same day. Pitre did not satisfy the demand within the days prescribed by law. Accordingly, notice of judicial sale was advertised and the trailer was sold at public auction on May 4, 1983. During the time between seizure and sale of the trailer, it was housed at Labat's Mobile Home, (Labat's) which was appointed as keeper by the Sheriff.
On April 10, 1983, under the same docket number in which the executory proceedings were pending, Pitre, and his wife, Cindy, filed an action entitled simply "Petition". In that pleading the Pitres name Dixie, Lloyd Johnson, the Sheriff of St. John the Baptist Parish, and Able Mobile Home Transport Co. (Able), who was employed by the Sheriff to secure and transport the trailer to Labat's, as defendants. The petition alleges defects in the proceeding which rendered the issuance of the order permitting executory process improper and violative of the federal constitution. Additionally, Pitre made various tort allegations. Defendants filed exceptions of no cause of action and prescription. The trial court granted the exception of no cause of action, and dismissed the Pitres' suit for damages. The matter was appealed.
This Court considered the appeal of that ruling, and affirmed the portions of the trial court's judgment which upheld the constitutionality of the statutes relating to the executory process and dismissed claims against the Sheriff based on claims that the seizure was illegal because of the improper issuance of executory process. Dixie Federal Savings and Loan Association v. Pitre, 498 So.2d 112 (La.App. 5 Cir.1986). Further, we affirmed the granting of the exception of no cause of action, but remanded the matter to the trial court with instructions that the Pitres should be allowed to timely amend their petition to allege sufficiently the factual basis to support their theories of recovery.
On remand, the Pitres filed a "Second Amended and Supplemental Petition", in which they added Labat's as a defendant. The petition makes allegations of defects in the executory process and makes allegations *915 in tort against all defendants. The tort claim seeks redress for the trailer, as well as, certain contents which were not covered by the mortgage.
Dixie filed a motion for summary judgment. On February 27, 1991, the trial court rendered a judgment, which granted in part and denied in part, Dixie's motion for summary judgment. In that ruling the trial court held that summary judgment was, "granted as to any relief sought stemming from the seizure of the mobile home itself and as it relates to any defenses or procedural defects of the executory process", and denied, "insofar as it relates to plaintiff's petition for damages resulting from the seizure of property not covered by the mortgage". No review of that ruling was sought by either party.
Dixie filed an amended answer and petition in which it made a cross claim against the Pitres alleging that the Pitres' acts of negligence were a proximate cause of their loss and a bar to recovery. In an amended third party demand, Dixie made claims against Able, Labat's, and the Sheriff of St. John the Baptist Parish. Able filed a motion for summary judgment on the ground that is served merely as transporter of the mobile home which was the subject of the chattel mortgage.
On September 20, 1993, the Pitres again amended their petition to add The Home Insurance Company (Home), the comprehensive general liability insurer of Dixie, as defendant in a direct action. The petition also makes more specific allegations against all defendants including an allegation that Dixie violated the Louisiana Unfair Trade Practices Act, embodied in LSA-R.S. 51:1401 et seq. In response to that allegation, Dixie filed a motion for summary judgment and/or an exception of no cause of action. That motion was denied by the court on June 5, 1996.
The court conducted a trial on the merits on September 30, 1997. At the close of the plaintiffs' case, all defendants moved for involuntary dismissals on various grounds. The court rendered judgment as follows:
1) The Motion for Involuntary Dismissal urged by defendants, FDIC and The Home Insurance Co. as to violations of the unfair trade and consumer protection act, federal trade act, and usurious interest rates was not properly before the court, as those matters had been disposed of prior to trial. Motions for involuntary dismissal on any other ground is DENIED.
2) The Motion for Involuntary Dismissal on the ground of prescription, urged by defendant Labat Mobile Homes, Inc., is GRANTED. No evidence established that Labat Mobile Home, Inc. and Dixie Federal Savings and Loan were solidary obligors. Therefore, filing of suit against Dixie did not interrupt prescription as to Labat. Any action against Labat would had to have commenced within one year of the occurrence. Filing of suit on November 28, 1986 was not timely.
3) The Motion for Involuntary Dismissal urged by defendant, Able Mobile Home Transport Co. is GRANTED. The evidence presented falls short of establishing liability on the part of Able for the loss or damage to the Pitres' movables. There was no testimony presented that contradicted Mr. Levantino's testimony that he properly disconnected the electricity and secured the trailer before removing it from the location.
4) The Motion for Involuntary Dismissal urged by defendant, Sheriff of St. John the Baptist Parish is DENIED. The Writ of Seizure granted by this court only authorized the seizure of the mobile home and the following specified items, air conditioning, furniture, a range and a refrigerator.
Additionally, the court rendered judgment in favor of the Pitres and against defendants, FDIC, Home and the Sheriff in the amount of $7,926.11. The court further found the Pitres 25% liable for the damages and reduced the award accordingly.
*916 Motions for new trial were filed by the Sheriff and Home, both of which were denied by the court. The Sheriff filed an appeal from the December 30, 1997 judgment. The Pitres filed an appeal from the February 27, 1991 judgment granting partial summary judgment to Dixie and the December 30, 1997 judgment. Subsequently, the Pitres filed a motion for attorney's fees and to set costs. On September, 30, 1998, the court rendered a judgment denying the attorney's fees, but granting the motion to set costs. The Pitres also filed an appeal from that judgment.
At the trial on the merits, Cindy Pitre testified that after a dispute with Dixie concerning additional escrow amounts due for insurance on the trailer, the Pitres began making partial payments on their monthly note, and hired an attorney to solve the problem. Mrs. Pitre maintained that she and her husband paid every payment on the trailer until the dispute arose. She further testified that she paid the November, 1982 payment, although she was not certain if any payments were made after that. On cross-examination Mrs. Pitre admitted that the November, 1982 payment was not made until January, 1983.
She stated that two notices on Dixie's stationery were left on her door sometime before November 24, 1982 regarding the failure to make payments as required. On the day of the seizure, she received a telephone call from her husband to tell her that their home was being taken away. She left work and returned to find the trailer gone. She went immediately to her attorney's office, but was unable to speak to him as he was out of town. Mrs. Pitre testified that everything the family owned was in the trailer.
Several days later the Pitres went to Labat's to retrieve their personal belongs. Everything was in disarray and many items, including jewelry, razors, a hair dryer, an alarm clock, cameras, stereo equipment and kitchen appliances were missing. Other items, including a television set and a microwave oven, were damaged. A complete list of the missing and damages items was compiled and is contained in the record.
On cross-examination Mrs. Pitre admitted that she received two letters from Dixie, one which indicated the payments on the loan were three months behind and one which gave "repossession instructions". The latter instructed the Pitres to remove all personal belongings from the trailer. Mrs. Pitre admitted that she knew in late 1982 that Dixie was in the process of repossessing the trailer, although she did not know who posted the notice on the front door of her mobile home. Mrs. Pitre further testified that she did not communicate with anyone at Dixie, Able, Labat's or the Sheriff's Office about the damaged or missing items.
The court also heard testimony from Burton Ory, who was the executive assistant for the Sheriff of St. John the Baptist Parish in 1984. He discussed the usual procedures in executory process, although he could not remember this specific seizure. Mr. Ory stated that it is standard procedure to allow an individual the opportunity to remove personal items at the time of a seizure, should the individual make such a request. Mr. Ory testified that it is not normal procedure for the Sheriff's Office to physically seize the trailer on the same day the notice of seizure is served. He indicated deputies had been out to the Pitres' trailer on an earlier date; however, there is no record of that in the files.
Mr. Ory recalled that the deputy who went to the trailer on April 13, 1983 was Mr. Gloriosa. Mr. Gloriosa radioed in to the office that the Pitres had not yet removed their belongings. Mr. Ory called Dixie for instructions and was told to seize the trailer immediately.
E.J. Pitre testified that on April 13, 1983 he came home to find that a truck from Able was attached to the trailer. As he *917 approached he was greeted by a sheriffs deputy who told Mr. Pitre the trailer was being repossessed and he had five minutes to remove his belongings from the trailer. Mr. Pitre left and went to his lawyer's office. When he returned, the trailer was gone. Mr. Pitre admits receiving two notices from Dixie, but denies receiving anything on April 13, 1983 from the sheriffs deputy. Two days later he learned the location of the trailer and went to retrieve his personal belongings. His testimony regarding the condition of the trailer and the family's personal property paralleled that of his wife. Further, he verified that he received the repossession instructions to remove all of his personal belongings from Dixie in November, 1982.
Mr. Pitre admitted that he saw his trailer later the same day it was seized at Labat's and called to verify that it was there. He did not go to retrieve his personal belongings until three days later when he was allowed access. His testimony does not explain what prevented him from obtaining access to the trailer in the interim and he admitted that he did not call Labat's until three days after the trailer was seized.
Leroy Labat, owner of Labat's, testified that the first call he received concerning access to the trailer was three days after it was seized and he granted immediate access upon receiving the call. No one from his place of business refused the Pitres access to the trailer. He did not recall telling Mr. Pitre that a court order was necessary, although on some occasions he requires it.
William Levantino, the owner of Able, testified that he was hired by the Sheriffs Office to pick up the Pitres' trailer. He stated that he recalled this particular repossession with specificity because the Pitres were his next door neighbors, and he had known them since 1979. When he first arrived, only the sheriffs deputy was at the scene. Mr. Pitre drove up a short time later and was quite upset. He was "hollering, screaming and cussing". He spoke to the deputy, then left. Mr. Pitre refused to take his personal items out of the trailer, so the deputy called Dixie to be certain he should proceed with the seizure. Mr. Levantino waited for about forty-five minutes while the deputy called in to make certain that all the paper work was in order. The entire procedure took about three hours.
Mr. Levantino testified that the deputy had "some papers in his hand" but Mr. Levantino could not be certain if Mr. Pitre took them. The deputy told Mr. Pitre that he would be given time to remove his things from the trailer. Mr. Pitre responded with obscenities and left to see his lawyer. Mr. Levantino stated that he took over one hour after Mr. Pitre left to disconnect and secure the trailer before he towed it away. Mr. Pitre did not return. Because Mr. Levantino was concerned about the intensity of Mr. Pitre's anger, he requested a second deputy to escort the trailer to Labat's. That request was granted.
After considering the evidence presented at trial, the court took the matter under advisement and subsequently rendered judgment disposing of motions for involuntary dismissal as previously stated. The judgment further found in favor of the Pitres, and against the FDIC, The Home Insurance Company, and the Sheriff of St. John the Baptist Parish in the amount of $7,926.11, but reduced the award by 25% due to liability of the Pitres.
The Pitres and the Sheriff filed timely appeals. The Pitres appeal from the February 27, 1991 judgment granting a partial summary judgment in favor of Dixie, the December 30, 1997 judgment deciding the merits of the lawsuit. Further, in a second motion for appeal, the Pitres appeal a judgment of the trial court on September 30, 1998 denying attorney's fees as requested as part of the motion to tax costs. The Sheriff appeals the December 30, 1997 *918 judgment. Home has filed a timely answer to the appeal.[2]
In brief to this court, the Pitres assign four errors for our review. The first matter for our consideration is the February 27, 1991 judgment which granted partial summary judgment to Dixie in so far as it relates to "any relief sought stemming from the seizure of the mobile home itself and as it relates to any defenses or procedural defects of the executory process". That judgment denied the motion for summary judgment as it related to "damages resulting from the seizure of property not covered by the mortgage".
FDIC and Home argue that the matter is res judicata because no appeal was taken from the ruling in 1991. We agree. LSA-C.C.P. article 1915, as it read at the time the judgment in question was rendered stated:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case when the court:
. . . . . . . . . . .
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969.
Article 966A provided that a party "may move for a summary judgment in his favor for all or part of the relief for which he has prayed". The summary judgment at issue herein grants Dixie relief as it relates to the executory process, and is therefor, allowed pursuant to article 966.
Article 968 provides in pertinent part:
Judgments on the pleadings, and summary judgments, are final judgments and shall rendered and signed in the same manner and with the same effect as if a trial had been had upon evidence regularly adduced. If the judgment does not grant mover all of the relief prayed for, jurisdiction shall be retained in order to adjudicate on mover's right to the relief not granted on motion.
From the Official Revision Comments it is clear that Louisiana differed from the Federal Rules in that no interlocutory summary judgment could be rendered.
Act 483 of 1997 amended Code of Civil Procedure articles 966 and 1915 relative to motions for summary judgments. The act amended article 1915 to provide that a partial summary judgment is not a final judgment for purposes of appeal, unless specifically agreed to by the parties or designated as a final, appealable judgment by the court after an express determination that there is no just reason for delay. The Pitres argue that the amendment should be applied retroactively, making the 1991 judgment interlocutory, and therefore reviewable, in this appeal of the merits of the case. In support of their position, they cite Kaufmann v. Fleet Tire Service, 97-1428 (La.9/5/97), 699 So.2d 75, and Young v. Dupre Transport Co., 97-0591 (La.App. 4 Cir. 10/1/97), 700 So.2d 1156.
The Pitres' reliance on those cases is misplaced. In Kaufmann v. Fleet Tire Service, 96-2444 (La.App.4/2/97), 691 So.2d 811, writ granted 97-1428 (La.9/5/97), 699 So.2d 75, writ denied 97-1132 (La.9/5/97), 700 So.2d 507. the Fourth Circuit Court of Appeal considered the appropriateness of the grant of a partial summary judgment on the issue of insurance coverage and the denial of a motion for partial summary judgment on negligence claims. The Supreme Court vacated the appellate court judgment and remanded the matter to the district court with instructions to reconsider the motions for summary judgment in "light of Act 483 of 1997....". Kaufmann v. Fleet Tire Service, 97-1428 (La.9/5/97), 699 So.2d at 76. The issue in that matter was whether a summary judgment was *919 appropriate and the legal analysis centered on LSA-C.C.P. article 966. The issue of finality and appealability of the judgment was not at issue. In Young, supra, the Fourth Circuit again considered the appropriateness of a motion for summary judgment pursuant to article 966, rather than its appealability under 1915.
While it has generally been held that Act 483 is procedural and should be applied retroactively, the jurisprudence which so holds interprets the act as it amends article 966, not 1915. See; Ledent v. Guaranty Nat. Ins. Co., 31-346 (La. App. 2 Cir. 12/28/98), 723 So.2d 531; Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637.
We do not find that a consideration of Act 483 as it relates to article 1915 would necessarily have the same result. The Louisiana Supreme Court recently set forth the standard for determination of retroactive application in Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180, 183:
The general rule against retroactive application of legislative enactments and its exceptions, is codified in La.Civ.Code. art. 6. Article 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Additionally, La. R.S. 1:2 provides that no statute is retroactive unless it is expressly so stated. Unlike La.Civ. Code art. 6, La.R.S. 1:2 does not distinguish between substantive, procedural and interpretive laws. However, the jurisprudence has generally construed the two provisions as being co-extensive.
Article 6 requires a two-fold inquiry. First, we must ascertain whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends unless the enactment impairs contractual obligations or vested rights. If no such intent is expressed, the enactment must be classified as either substantive, procedural or interpretive. It is well accepted that substantive laws either establish new rules, rights, and duties or change existing ones, while interpretive laws merely establish the meaning the statute had from the time of its enactment. Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding or the operation of the laws. Nonetheless, since the application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the Legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. (Citations omitted)
Here there is no clear expression of legislative intent. We believe that if the amendment to article 1915 were to be applied retroactively, it would operate to disturb vested rights. At the time the 1991 judgment was rendered it was a final, appealable judgment which, when not appealed became definitive by operation of law. It is clear that at the time of trial, all parties, including to some extent, the Pitres, relied on the finality of that judgment in presenting evidence. To rule that the 1991 judgment is not final because of the subsequent amendment to the law, would in our view, disturb the vested rights of some of the parties in this case. Accordingly, we find that Act 483, as it relates to the amendment to article 1915 should be given prospective application.
Thus, because we find that the summary judgment was properly rendered, it necessarily follows that the judgment *920 was final and appealable under the law as it existed in 1991. No appeal was taken from the 1991 judgment. Accordingly, it constitutes a final judgment which is conclusive between the same parties. LSA-R.S. 13:4231. Therefore, the issue presented in the Pitres' first assignment of error relating to the claim for illegal seizure of the mobile home is not before us and will not be addressed in this opinion.
In the second assignment, the Pitres allege the trial court erred in refusing to declare the procedure used in the executory process to be unconstitutional. That matter was previously addressed by this court in Dixie Federal Savings and Loan Association v. Pitre, 498 So.2d 112 (La.App. 5 Cir.1986), and has become the "law of the case". The "law of the case" is a doctrine whereby an appellate court will not reconsider its prior rulings on an issue in a subsequent appeal in the same case. The "law of the case" doctrine applies to previous decisions on writ applications as well as full appellate proceedings. Veazey v. Elmwood Plantation Associates, 625 So.2d 675 (La.App. 5 Cir.1993), writ granted 93-2818 (La.2/4/94), 633 So.2d 158, affirmed by 93-2818 (La.11/30/94), 650 So.2d 712. This doctrine will not be applied in cases of palpable error or when, if the "law of the case" were applied, manifest injustice could occur. We find no such conditions in the instant matter. Accordingly, we refuse to revisit the issue in this opinion.
All parties have assigned errors relating to the trial court's finding of liability. In three assignments, the Sheriff asserts that the trial court erred in finding him liable because he was acting in a ministerial capacity, and was not negligent in carrying out that duty, and gave Pitre adequate notice to remove his personal belongings. Home, as Dixie's insurer, asserts that the trial court erred in finding Dixie liable because the finding that the executory process was proper precluded any claim for damages. The Pitres contend that the trial court erred in finding them 25% at fault.
The Sheriff argues that his only duty was to seize the trailer. He maintains he was acting in his official capacity to execute the writ as ordered by the court. There was no duty to remove the contents of the mobile home, nor was he authorized by the writ of seizure to enter the home.
It is clear from the record that the trial court exonerated the Sheriff from any liability arising from the seizure of the trailer. However, the court found that the Sheriff was liable because he did not give the Pitres adequate notice of the seizure of their mobile home, and therefore, they had insufficient time to remove their personal things which were not included in the writ of seizure or the mortgage.
Dixie argues it used the remedy legally afforded in the executory process, and no representative present at the seizure. Thus, it could not have been held liable. The trial court found Dixie responsible because it was at Dixie's request and order that the trailer was seized with the Pitres' belongings still inside.
The trial court gave written reasons for judgment which show that the lack of notice of the seizure was a serious consideration in the decision to assign liability to both the Sheriff and Dixie. Further, it is clear that the trial court found that the Pitres could have mitigated the damages by removing some of their more valuable personal items in the limited time available. In reasons for judgment, the trial court stated:
It is certainly true that Dixie Federal (FDIC's predecessor) was not present on the scene at the time of the seizure. However, it is equally true that, without authorization from Dixie's representative, the seizure would not have proceeded at that time. Officer Burt Ory testified that he contacted Dixie upon his arrival at the scene and was instructed to proceed with the seizure. The only evidence that the Pitre's (sic) had received *921 prior notice was the introduction of two documents that had been left in the plaintiffs' doorway. Neither of the documents were dated or addressed to the Pitre's, (sic) but they were on Dixie's stationary (sic). The evidence suggests that the documents had been left some time prior to November 24, 1982. This could not be considered adequate notice. The sheriff's officer also testified that he served the Notice of Seizure upon Mr. Pitre at the time of seizure. He could offer no explanation as to why it was done that way. He did testify, however, that it was unusual to serve the notice on the same day as the seizure. He further states that he gave Mr. Pitre the opportunity to remove his personal belongings. What these defendants seem to overlook is the fact that this was a mobile home, where Pitre and his family had lived for several years and kept all of their belongings; unlike an automobile that could be readily cleared in a matter of minutes. FDIC, as successor to Dixie, as well as the Sheriff's Department must be held accountable for the failure to provide plaintiffs with adequate notice.
Finally, Mr. and Mrs. Pitre were found to be 25% responsible for their damages because, even though the notice they received was not sufficient, it was enough to alert them. They knew that they were no longer making payments. They should have known or they should have inquired about the status of the proceedings. It had been several months since the inception of the dispute.
The amount awarded is considered fair to all parties and is based on the undisputed values testified to and inconvenience due to the loss of the movables.
As we have made clear, there are no issues to be discussed with regard to the executory process for the seizure of the trailer and the contents which were listed in the mortgage. The issues for consideration in this portion of the opinion concern the claim for damages for wrongful seizure and conversion of items belonging to the Pitres which were not included in the mortgage, and therefore, the writ of seizure, but were nonetheless seized when the trailer was towed to Labat's.
Damages for wrongful seizure are allowed after an illegal seizure. This award can include damages in compensation for embarrassment, humiliation, mental anguish and worry. Moore v. Louisiana Bank and Trust Company, 528 So.2d 606, 614 (La.App. 2 Cir.), writ denied, 531 So.2d 269 (La.1988); Taylor v. Hancock Bank of Louisiana, 95-0666 (La.App. 1 Cir. 11/9/95), 665 So.2d 5, 7. Under LSA-C.C. article 2315 a plaintiff must first show the seizure was illegal or wrongful. The duty/risk analysis in Louisiana law requires that the plaintiff further shows that the wrongful seizure was caused by the fault of one who owed a duty to the plaintiff, and that there was a breach of this duty. Taylor v. Hancock Bank of Louisiana, supra.
Further, we believe the plaintiffs have stated a cause of action in conversion.
A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

Dual Drilling Co. v. Mills Equipment, 98-0343, 98-0356 (La.12/1/98), 721 So.2d 853, 857.
In Dual Drilling Co. v. Mills Equipment, supra, the Supreme Court explained that conversion in Louisiana law is different from the tort of conversion under common law in that it does not require a showing of an intentional wrong giving rise to strict liability. In Louisiana, conversion *922 is tortious activity established upon proof of fault under LSA-C.C. article 2315. Id.
LSA-C.C.P. article 2631 restricts the use of executory process to those proceedings which are used to effect the seizure and sale of property to enforce a mortgage or privilege. The writ of seizure was specific as to which items were to be seized by the Sheriff. Items not included in the mortgage or in the writ of seizure are not subject to seizure via executory process. It is undisputed that the items not included in the mortgage were in the trailer at the time of the seizure.
The trial court used the method of notice given to the Pitres as a basis for the finding of liability on the part of the Sheriff and Dixie. Contained in the record are two correspondences on Dixie's stationery which were left on the Pitres' door. The first is an undated handwritten note which states, "Sorry I missed you! I was here today to survey your trailer. For further information please call. ...." . The second note is also undated and gives "repossession instructions" including an instruction to "remove all personal property".
LSA-C.C.P. article 2639 requires that the clerk issue a demand upon the defendant for payment of the amount due and all costs of court before issuing the writ of seizure and sale. The record contains a writ of seizure and sale issued on March 10, 1983, although there is no indication that the Pitres received such notice. There is a sheriffs return of notice of seizure dated April 13, 1983, the same day the trailer was seized. While any defenses to the executory process regarding proper notice are not at issue in this matter for reasons previously discussed, the method of notice can serve as a basis for a finding of tort liability in the suit for wrongful seizure and conversion of the items not included in the mortgage.
While there is some difference in testimony as to whether the Sheriff actually handed the notice to Mr. Pitre at the time of seizure, it is undisputed that Able was at the scene prepared to seize the trailer when Mr. Pitre arrived, and that the Sheriff had not given the Pitres notice before that time. When the deputy spoke to Mr. Pitre and became aware that he had not removed his personal items, Dixie was contacted. Dixie instructed the deputy to proceed with the seizure, knowing it was seizing more than those items in the mortgage. It is also clear that Mr. Pitre would have been allowed some time before the trailer was towed away to retrieve some of his personal items. Further, Mr. Pitre could have visited the trailer sooner to mitigate the losses. Based on the facts elicited at trial, the court found liability in some measure for all parties.
The finding of fact by a trial court will not be disturbed on appeal unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Where two reasonable views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder's conclusion was a reasonable one. Daye v. General Motors Corp., 97-1653 (La.9/9/98), 720 So.2d 654, 658-9, and cases cited therein. Given that standard of review and the facts of the instant case, we cannot find the trial court's rulings were manifestly erroneous or clearly wrong.
In a separate assignment of error, the Pitres argue the trial court erred in not granting damages and attorney's fees under the Louisiana Unfair Trade Practices Act. Home contends the trial court was correct in so ruling.
After the trial on the merits, the Pitres filed a motion to fix costs, including attorney's fees. The matter was heard and denied as to the request for attorney's fees by judgment rendered on September 30, 1998. The Pitres have filed a second appeal with regard to that judgment. In denying the Pitres' request for attorney's *923 fees, the trial court stated; "(i)n the case before us, there is no statute or contract which would allow for the granting of attorney's fees. Neither did the judgment signed by this court award attorney's fees. Movant's reliance on the federal statutes and supporting cases in (sic) misplaced since there was no finding of a violation of any of those statutes".
In pleadings the Pitres have made general allegations of unfair and deceptive trade practices, and alleged that Dixie charged usurious interest of 13.79%. In brief to this court, the Pitres argue that the judgment on the merits of the case dated December 30, 1997 was silent on whether it is based in tort or unfair and deceptive trade practices. Further, a motion for involuntary dismissal based on the claims of unfair and deceptive trade practices was denied at the close of trial. A careful reading of the judgment shows that the trial court denied the motion as it related to the unfair trade practices because the court determined those issues had been disposed of prior to trial.[3] In the alternative, the Pitres request that this court review the evidence presented and find Dixie liable under the Louisiana Unfair Trade Practices Act.
The Louisiana Unfair Trade Practices Act is embodied in LSA-R.S.51:1401 et seq. LSA-R.S. 51:1405(A) makes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. Acts which constitute unfair or deceptive practices are not specifically defined in the statute and are determined by the courts on a case-by-case basis. Ferrera v. City of Shreveport, 29-845 (La.App. 2 Cir. 9/24/97), 702 So.2d 723, 726, writ denied 97-2679 (La.1/9/98), 705 So.2d 1109. In order to recover damages for a claim made under this act, a plaintiff must prove that the conduct offends public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Camp Dresser & McKee, Inc., v. Steimle and Associates, Inc., 94-547 (La.App. 5 Cir. 2/15/95), 652 So.2d 44. For conduct to be unfair it must offend established public policy. United Group v. Vinson, 27-739 (La.App. 2 Cir, 1/25/96), 666 So.2d 1338, writ denied, 96-0714 (La.9/27/96), 679 So.2d 1358. Fraud, deceit and misrepresentation constitute deceptive practices. Monroe Medical Clinic, Inc., v. Hospital Corporation of America, 522 So.2d 1362 (La.App. 2 Cir.1988); United Group v. Vinson, supra. 666 So.2d at 1346. We have reviewed the record in the instant matter, and find no proof offered at trial which would support a claim under this act.
The Pitres also make a claim pursuant to 15 U.S.C.A. 45(a)(1) which states that "(u)nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful". Assuming arguendo that this law is applicable, we find no proof presented by the Pitres which would support a finding that the defendants were liable under that law.
It is well established that attorney's fees are not recoverable in a civil action in the absence of a statute or contract. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382, 1386. Because we find no applicable statute under which attorney's fees could have been awarded, we find no error in the trial court's ruling denying the Pitres' request.
The Sheriff and Home both challenge the award of damages. The trial court made an in globo award of $7,926.11. In reasons for judgment the trial court stated that the amount awarded "is based *924 on the undisputed values testified to and inconvenience due to the loss of the movables". At trial, the Pitres offered evidence to support actual losses of about $2900.00. Thus, the trial court apparently awarded about $4000.00 in general damages.
In the assessment of damages, the trier of fact is left with much discretion and this court may not disturb an award of damages absent a clear abuse of that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993); Lapeyrouse v. Wal-Mart Stores, Inc., 98-547 (La.App. 5 Cir. 12/16/98), 725 So.2d 61. "It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient." Reck v. Stevens, 373 So.2d 498, 501 (La. 1979); Theriot v. Allstate Ins. Co., supra, 625 So.2d at 1340. This court must "review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions". Id., citing Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). The discretion afforded the trier of fact in a damage award is "great, and even vast, so that an appellate court should rarely disturb an award of general damages". Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Given the facts of this case and the above stated standard of review, we find no error in the trial court's award of damages.
The final issue presented for our consideration is assigned by Home. In its final assignment of error, Home argues that "the trial court erred in failing to hold that the policy of insurance issued by the Home to Dixie does not provide coverage for the Pitres' claim". Home is the general liability insurer of Dixie. It was brought into this lawsuit by a direct action in the third supplemental and amending petition filed by the Pitres. Home argues there is no coverage under the policy because there was no "occurrence" as defined by the policy. The Pitres argue that Home has not specifically pled its defenses and is, therefore, precluded from asserting those defenses.
In its answer filed November 22, 1993, Home acknowledged the policy and urged that the "policy is its own best evidence and the provisions, exclusions, and limitations therein are pled herein as though copied in extenso". On August 11, 1997, the FDIC, Receiver for Dixie, filed a cross-claim and petition for declaratory judgment seeking to be indemnified as an insured under the policy.[4] On August 15, 1997 Home filed a motion for leave of court to file an answer to the cross-claim beyond the discovery cutoff date. The amended answer which Home filed specifically raises the defense that FDIC is not a named insured under the policy. It also raises certain specific defenses against the Pitres, including the failure of an occurrence as defined by the policy. The Pitres objected to the answer as it relates to the assertion of defenses in the policy against their claim. After a hearing on the matter, the trial court rendered a judgment dated September 3, 1997 in which it granted Home permission to file the amended answer "and same shall only apply to the Federal Deposit Insurance Corporation's third party claim and not granted as to Pitre since the Home has already filed its Answer in response to the allegations made against the Home.....".
LSA-C.C.P. article 1005 provides that all affirmative defenses shall be specifically pled in the answer. In the absence of such pleading, no proof can be offered in connection with that affirmative defense. Farmers-Merchants Bank v. St. Katherine, 96-1138 (La.App. 3 Cir. *925 4/30/97), 693 So.2d 876, writ denied 97-1867 (La.10/31/97), 703 So.2d 25. Because Home raised no affirmative defense relating to coverage afforded the Pitres under the policy, we will not consider the merits of this assignment.
For the foregoing reasons, we affirm the trial court. Each party to bear its own costs.
AFFIRMED.
NOTES
[1] Since the inception of this matter, Dixie Savings and Loan Association has undergone several changes in name and status. The FDIC has become the statutory successor receiver on January 1, 1996 and is the current party substituted for Dixie in this lawsuit. However, for purposes of ease of flow in this opinion, we refer to all intermediate parties as "Dixie".
[2] The FDIC also filed an answer to the appeal. However, because the answer was untimely pursuant to LSA-C.C.P. article 2133, the assignments of error briefed therein will not be addressed in this opinion.
[3] It is not clear from the record when, or if, these matters were decided prior to trial. It is assumed the trial court considered that the allegation of usurious interest, and the general allegation of unfair and deceptive trade practices related to relief sought stemming from the seizure of the mobile home in the executory process, and thereby considered the issues decided with the February 27, 1991 judgment.
[4] By joint motion and court order, that matter has been severed from the other demands and it not at issue in this appeal.